UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ADRIEN OZUNA,<br><br>                Petitioner,<br><br>   v.<br><br>DONALD HOLBROOK,<br><br>               Respondent. | NO. 1:16-CV-3161-TOR<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

BEFORE THE COURT is Petitioner Adrien Ozuna's Petition for Writ of Habeas Corpus (ECF No. 11). The matter was submitted for consideration without oral argument. Petitioner, a prisoner in Washington Department of Corrections custody pursuant to a conviction by jury verdict for intimidating a witness, is proceeding *pro se*. The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, the Petition is **DENIED**.

//

//

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 1

## BACKGROUND

Petitioner Adrien Ozuna was convicted by jury verdict for intimidating a witness in Washington. *See* ECF No. 14 at 1. Petitioner appealed the conviction to the Washington Court of Appeals and, upon being denied relief, to the Washington Supreme Court. Petitioner now seeks a writ of habeas corpus, arguing there was insufficient evidence to convict. The Washington Supreme Court summarized the facts established at trial:

> In June 2010, Ozuna was incarcerated in the Yakima County Department of Corrections (Yakima County Jail). Ozuna was awaiting sentencing for a prior conviction. The conduct underlying that conviction involved Augustine Jaime Avalos, a member of the same gang as Ozuna. Avalos had testified against Ozuna in Ozuna's underlying trial and was also incarcerated in the Yakima County Jail.
>
> On June 8, when Ozuna was moved from one prison cell to another, a corrections officer found two unstamped, unsealed letters in his possession. The officer confiscated the letters because Ozuna was not allowed to have the letters in the new cell and because the envelope in which they were found listed a return address for another inmate, Marc Cole. A handwriting expert testified that Ozuna wrote the letters. Ozuna later conceded he wrote the letters.
>
> One letter is not relevant to this case. The other letter is relevant and was admitted into evidence. The letter is addressed to "Primo" and signed by "Primo," meaning cousin. It is undated. The letter reads in part:
>
>> Ey homie, I just got your [unreadable]. Well it was a blessing to hear from you. It put's a smile on my face to know that your ready to ride for me.... [A]s you already know, I [agreed to a plea deal for] 10 years 9 months cause of a pussy that don't know how to ride or Die. He would rather break weak than to honor our sacred code of silence. He is now marked a rat and a piece of shit in my book. He has sealed his fate and now it's just a matter of time. He rode with me and was

given my trust and he decided to dishonor that privaledge.... [A]ll I can say for that fool is, you know what time it is. You guys let him live in luxery for way to long already ... [H]ow can you live with a rata like that and still be able to rest in peace in that puto's presence? I hope and pray for satisfaction before I leave this building and may that fool suffer and Die in his rat hole. Fucken snitch bitch rat! ... That puto took 10 years of my life and a fucken leva from my barrio, "my big homie" "Gorge" [is] living in the same house as him.... Gorge could of did something but just decided to let that puta slide and live under the same roof with him.... Tell that fool he's a piece of shit just like him. Let'em know that this is Campana Gang! He put's the crack in our bell. No loyalty, no honor, no heart! ... Tell'em he's as good as dead to me.

[L]et that fool feel the wrath and let'em know the rata that he is and tell'em that I said that bad things come to those that snitch. May he rest in piss ... So now you know what I want primo, don't hesitate vato. Take action, reep the rewards later. Don't think, just act.... Hit me up later after the shit get's handled. Do it on the 25 cause that's when I have court, [and] I want to have a smile on my face that day knowing that ... fool's getting a lil taste of what's coming to him. The 25 is the day I get sentenced. Good looking out Primo, don't let me down fucker! ... Tell'em that Vanessa's gonna be the one to set him up for us, mark my words! Show him how set ups are done. There just waiting for him to get out.... Lol.... Satisfaction will be mine! Let'em know that he fucked up.

The State produced ample testimony confirming that "[t]here was a threat to another person in [the letter]." However, no evidence established that the letter was delivered to anyone before the officer confiscated it.

On June 22, a detective showed the undelivered letter to Avalos. The detective believed Ozuna's letter targeted Avalos, and the detective was concerned for Avalos's safety because Avalos was a former gang member with Ozuna and had testified against him. The detective had investigated Ozuna's underlying crime and was present during trial. On the day the detective showed Avalos the letter, she also conducted a recorded interview with him. The content of that interview was not admitted as substantive evidence at trial.

On June 25, the day Ozuna was scheduled to be sentenced for the underlying conviction, Ozuna used a prison phone to call his father. The call was recorded, admitted into evidence, and played to the jury. During the call Ozuna stated, "[T]hey wrote me up for tampering with a witness—or not tampering—threatening a witness." Ozuna then said he thought "they're going to show the letter to the [sentencing] judge or some shit," so he said he was going to "be prepared [for the sentencing hearing] and I'm like hey man, you've got to understand, you know, I'm dong ten years because of this gato and I was mad and—[inaudible on tape—language]—you know? Try to just set that whole shit down. Hey, I wrote it in—in a time of passion and, you know?" Later that day, Ozuna attended his sentencing hearing and was sentenced to 10 years and 9 months in accordance with his plea agreement. The record does not reflect whether the confiscated letter was discussed at the hearing.

On July 9, another inmate in the same prison, David Soto, assaulted Avalos while in a courthouse holding room. Avalos received stitches at the hospital for his injuries. The inmates who were present when Avalos was injured were not cooperative. No evidence suggests that Ozuna was present during the assault.

At Ozuna's intimidation trial, the State produced testimony that Ozuna and Soto are members of, and Avalos is a former member of, the gang called the Sureños. Their gang is also referred to by its subgroup, the Bell Garden Lokotes or BGL, within the larger organization of the Sureños.

Avalos testified at Ozuna's intimidation trial. A reasonable jury could view his testimony as evasive. The State attempted to impeach his credibility with questions based on his recorded interview given to the detective on June 22. For example, when Avalos was asked, "And you received some verbal threats?," he testified, "Like I said, people talk a lot through their doors." He was asked, "Isn't it true that you said [in the recorded interview] you did receive a letter that stated that the homeys were waiting for you in a shelter ... to take care of you?," but he responded, "I don't remember that, no." *Id.*

The State also produced expert testimony about gang culture from a Sunnyside Police Department officer who worked in the Yakima area and was knowledgeable about the local gangs, as well as the individuals at issue here. The expert was asked, "[A]re you aware of ... a no snitch code within

the BGL gang?" He responded, "[I]t's not just the BGL gang, it's all of the gang members so I'm not going to clump just one; it's the whole entire culture of the gang culture. That is one of their main staples, the no snitch credo." And the State asked, "If a gang member felt like another gang member snitched on them would it be likely to see some retaliation?" He answered "Likely[?] [N]o, there will be." The expert testified about the hierarchical decision-making structure of gangs, explaining that, for a significant action—such as the retaliation against a former witness—to be taken, someone high in the gang must authorize the action or else it cannot proceed. Ultimately, the officer testified about how the content of Ozuna's undelivered letter was consistent with gang culture.

Similarly, two other officers from the Yakima County Jail discussed the status of being a "shot caller" or "tank boss," meaning someone who has elevated decision-making authority within a gang or prison. One officer testified that Ozuna was a "shot caller" in the Yakima County Jail.

After the State rested its case, Ozuna called an admitted Sureños gang member, Brandon Perren, as a witness. Perren testified that he and Ozuna were in the Yakima County Jail together and that they communicated via letters. He testified that after Ozuna's letter had been confiscated, Ozuna sent him a different letter instructing him to "leave [Avalos] alone."

*State v. Ozuna*, 184 Wash. 2d 238, 239–43 (2015) (internal citations omitted; brackets in original).

## SCOPE OF FEDERAL HABEAS CORPUS PETITION

Per 28 U.S.C. § 2254(a), "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." As the Supreme Court has stated, "Federal courts hold no

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 5

supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 221 (1982). In other words, Federal habeas corpus relief does not lie for errors or perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Rose v. Hodges*, 423 U.S. 19, 21-22 (1975) (per curiam). "A federal habeas court can only set aside a state-court decision as 'an unreasonable application of . . . clearly established Federal law,' § 2254(d)(1), if the state court's application of that law is 'objectively unreasonable.'" *McDaniel v. Brown*, 558 U.S. 120, 132-133 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). While the federal courts look to state law to determine the substantive elements of the criminal offense, the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law. *Coleman v. Johnson*, 566 U.S. 650, 655 (2012).

**STANDARD OF REVIEW**

Insufficient evidence claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Id.* at 651. First is the deference owed to the jury as the trier of fact, and second is the deference owed to the state court adjudication. *Id*.

As to the first layer of deference, "'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at

trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'" *Id*. (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In assessing the jury's determination, the court must review the evidence "in the light most favorable to the prosecution[,]" *McDaniel*, 558 U.S. at 133 (quoting *Jackson*, 443 U.S. at 319), and must presume that the trier of fact resolved any conflicting inferences in the record in favor of the prosecution, and must defer to that resolution, *id*. (quoting *Jackson*, 443 U.S. at 326). The jury is entitled to believe the State's evidence and disbelieve the defense's evidence. *Wright v. West*, 505 U.S. 277, 296 (1992). The jury's credibility determinations are entitled to "near-total deference under *Jackson*." *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004). When the prosecution's case is a mixture of circumstantial and direct evidence, or even circumstantial evidence alone, it is sufficient that the jury is adequately charged on reasonable doubt. *Holland v. United States*, 348 U.S. 121, 139-140 (1954).

As to the second layer of deference, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos*, 565 U.S. at 2 (citation omitted).

## DISCUSSION

Under Washington state law, a person commits the crime of intimidating a witness when he "directs a threat to a former witness because of the witness's role in an official proceeding." Wash. Rev. Code 9A.72.110(2); *State v. Ozuna*, 184 Wash. 2d at 239. One directs a threat by "communicat[ing], directly or indirectly, the intent to harm another in various ways[,]" which can be communicated to a third party without ever being communicated to the threat's target. *State v. Ozuna*, 184 Wash. 2d at 239, 248.

Upon review of the submitted materials, the Court finds Ozuna is not entitled to a writ of habeas corpus. There was sufficient evidence for the jury to find Ozuna was in the position to and did in fact relay orders for other gang members to carry out the assault of Avalos (a former Sureños gang member) for "snitching" on Ozuna.

Notably, Ozuna was found with an undelivered letter he wrote to another gang member in the jail that clearly demonstrated his intent to secure an assault against Avalos for testifying against him. The letter was not delivered, but the circumstances are such that a jury could easily find Petitioner communicated the order otherwise and such was carried out. As the Washington Supreme Court noted, a reasonable inference from the substance of the confiscated letter is that

Petitioner was responding to its intended recipient and that Petitioner had already ordered the assault or otherwise conveyed the desire for such (the letter states: "It put's [sic] a smile on my face to know that your [sic] ready to ride for me…. [A]s you already know, I [agreed to a plea deal for] 10 years 9 months cause of a pussy that don't know how to ride or Die."). *State v. Ozuna*, 184 Wash. 2d at 249. This decision is not objectively unreasonable. *Cavazos*, 565 U.S. at 2 (citation omitted).

Moreover, evidence was admitted that showed Petitioner was in a position within the Sureños gang to sanction retaliatory measures against those that testified against gang members and that retaliation for "snitching" is a universal response in gang culture. About two weeks after the letter was found, Soto (a member of the Sureños gang) assaulted Avalos. Afterward, Avalos became less than forthcoming when testifying against Ozuna. Although Petitioner's witness (another member of the Sureños gang) testified that Petitioner sent him a letter ordering him to leave Avalos alone, the jury did not have to believe the witness, and the circumstances are such that disbelieving such testimony was reasonable given the "no snitch" policy amongst gang members. If anything this witness testimony further demonstrated Petitioner was in a position within the Sureños gang to call such shots and was able to, and did, communicate his desires to other gang members. A reasonable juror could easily find Ozuna committed the crime of intimidating a witness under these facts.

## CERTIFICATE OF APPEALABILITY

Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant." Unless a COA is issued, an appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding in which detention arises out of process issued by a State court. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. Because the Court's decision is being resolved adversely to Petitioner, a decision on a COA is required. The standard for issuing a COA is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court finds that the issue of whether there was sufficient evidence to convict is not a debatable issue and thus denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Petitioner Adrien Ozuna's Petition for Writ of Habeas Corpus (ECF No. 11) is **DENIED**.

2. A Certificate of Appealability is **DENIED**.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to the parties, and close the file.

**DATED** January 16, 2018.



THOMAS O. RICE
Chief United States District Judge